UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

                              CASE NO: 18-61316

KBC ENTERPRISE LLC
 (a/k/a KBC DISTRIBUTING and
 a/k/a D.R. JONES DISTRIBUTING)               CHAPTER 11

      DEBTOR IN POSSESSION

---

**DEBTOR'S PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**

---

Respectfully submitted,

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY 40507
Telephone: (859) 231-5800
Facsimile:  (859) 281-1179
ldelcotto@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

Dated:  April 18, 2019

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

### TABLE OF CONTENTS

Section   Title                                                                          Page

I.       DEFINITIONS, RULES OF CONSTRUCTION, AND
         COMPUTATION OF TIME....................................................................1
         1.1    Defined Terms .......................................................... 1-7
         1.2    Rules of Construction ..................................................7
         1.3    Computation of Time...................................................7

II.      GENERAL OVERVIEW OF THE PLAN ....................................... 7-8

III.     TREATMENT OF UNCLASSIFIED CLAIMS...................................8
         3.1    United States Trustee Fees............................................8
         3.2    Ordinary Course Administrative Claims ........................8
         3.3    Other Allowed Administrative Claims ...........................8
         3.4    Bar Date for Administrative Claims ........................... 8-9
         3.5    Priority Tax Claims.....................................................9
         3.6    Other Allowed Priority Non-Tax Claims........................9
         3.7    Post-Confirmation Professional Claims ........................9

IV.      CLASSIFICATION OF CLAIMS AND INTERESTS ....................10
         4.1    Class 1:  Allowed Secured Claim of BizCap ................10
         4.2    Class 2:  Allowed Secured Claims of Ally ...................10
         4.3    Class 3:  Allowed Secured Claims of Huntington Bank.......... 10-11
         4.4    Class 4:  Allowed Secured Claim of KHIC ..................11
         4.5    Class 5:  Allowed Secured Claim of On Deck...............11
         4.6    Class 6:  Allowed Secured Claim of Action .................11
         4.7    Class 7:  Allowed Secured Claim of IRS......................11
         4.8    Class 8:  Allowed Claim of Farnam............................12
         4.9    Class 9: Allowed Other Secured Claims.......................12
         4.10   Class 10: Allowed General Unsecured Claims............12
         4.11   Class 11: Equity Security Interests in the Debtor .........12

V.       TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS........12
         5.1    Class 1:  Allowed Secured Claim of BizCap .......... 12-13
         5.2    Class 2:  Allowed Secured Claims of Ally ...................13
         5.3    Class 3:  Allowed Secured Claims of Huntington Bank...............13
         5.4    Class 4:  Allowed Secured Claim of KHIC ............ 13-14
         5.5    Class 5:  Allowed Secured Claim of On Deck .............14
         5.6    Class 6:  Allowed Secured Claim of Action .................14
         5.7    Class 7:  Allowed Secured Claim of IRS................ 14-15
         5.8    Class 8:  Allowed Claim of Farnam............................15
         5.9    Class 9: Allowed Other Secured Claims.......................15

|        | 5.10 | Class 10: Allowed General Unsecured Claims | 15 |
|        | 5.11 | Class 11: Equity Membership Interests in the Debtor | 15 |
|        | 5.12 | Valuation of Secured Claims | 15 |
| VI.    |      | MEANS OF IMPLEMENTATION OF PLAN | 15 |
|        | 6.1  | General Description of Means of Implementation | 16 |
|        | 6.2  | Vesting of the Debtor's Assets | 16 |
|        | 6.3  | Funding the Plan | 16 |
|        | 6.4  | Quarterly Reports | 16 |
|        | 6.5  | Continued Engagement of Professionals | 16-17 |
|        | 6.6  | Ordinary Course Operations | 17 |
|        | 6.7  | Parties Responsible for Implementation of the Plan | 17 |
|        | 6.8  | Vesting and Prosecution of Claims and Causes of Action | 17 |
|        | 6.9  | Notice of Default/Cure Period | 17 |
|        | 6.10 | Retiree Benefit Plans | 17 |
| VII.   |      | EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 17 |
|        | 7.1  | Assumption, Assignment and/or Rejection | 17-18 |
|        | 7.2  | Bar Date for Rejection Damages Claims | 18 |
|        | 7.3  | Allowed Cure Claims on Assumed Unexpired Leases and/or Executory Contracts | 18 |
|        | 7.4  | Repossession Deadline for Rejected Personalty | 18 |
| VIII.  |      | VOTING AND REQUEST FOR PLAN CONFIRMATION | 19 |
|        | 8.1  | Voting Procedure | 19 |
|        | 8.2  | Classes Entitled to Vote on the Plan | 19 |
|        | 8.3  | General Provisions for Voting | 19 |
|        | 8.4  | Requirement of Acceptance by One Class of Claims | 19 |
|        | 8.5  | Confirmation by Cramdown Pursuant to 11 U.S.C. § 1129(b) | 19 |
|        | 8.6  | Conditions Precedent to Confirmation | 19-20 |
|        | 8.7  | Conditions Precedent to Effective Date | 20 |
| IX.    |      | DISTRIBUTIONS | 20 |
|        | 9.1  | Distributions on Claims Allowed as of Effective Date | 20 |
|        | 9.2  | Method of Distributions | 20 |
|        | 9.3  | Timing of Distributions | 20 |
|        | 9.4  | Delivery of Distributions | 20 |
|        | 9.5  | Unclaimed Distributions | 20 |
|        | 9.6  | *De Minimis* Distribution Cutoff | 20-21 |
|        | 9.7  | Compliance with Tax Requirements | 21 |
|        | 9.8  | Allocations of Distributions between Principal and Interest | 21 |
|        | 9.9  | No Interest on Claims | 21 |
| X.     |      | PROCEDURES FOR RESOLUTION OF DISPUTED CLAIMS AND CLAIM ESTIMATES | 21 |

|  | 10.1 | Procedure for Contingent and Unliquidated Claims | 21 |
|  | 10.2 | Objections to Claims | 21-22 |
|  | 10.3 | Estimation of Claims | 22 |
|  | 10.4 | No Distributions Pending Allowance | 22 |
|  | 10.5 | Authority to Compromise and Settle Disputed Claims without Court Approval | 22 |
| XI. |  | EFFECT OF PLAN CONFIRMATION, RELEASES, AND INJUNCTIONS/STAYS | 22 |
|  | 11.1 | Discharge of Claims | 22-23 |
|  | 11.2 | Subordination Rights | 23 |
|  | 11.3 | **Injunctions** | 23 |
|  | 11.4 | **Terms of Injunctions and Stays** | 23 |
|  | 11.5 | **Injunction and Stay as to Officers and Insiders** | 23-24 |
|  | 11.6 | Indemnities for Members, Directors and Officers | 24 |
|  | 11.7 | Post-Confirmation Liabilities of the Reorganized Debtor | 24 |
|  | 11.8 | Copies of Confirmation Order Sufficient Evidence of Waivers, Releases | 24 |
|  | 11.9 | Binding Effect | 24 |
| XII. |  | MISCELLANEOUS PLAN PROVISIONS | 24 |
|  | 12.1 | Effectuating Documents | 24 |
|  | 12.2 | Exemption from Certain Transfer Taxes | 24 |
|  | 12.3 | Closing of the Case | 24-25 |
|  | 12.4 | Further Authorizations | 25 |
|  | 12.5 | Modification or Withdrawal of Plan | 25 |
|  | 12.6 | Consummation of the Plan | 25 |
|  | 12.7 | Severability of Plan Provisions | 25 |
|  | 12.8 | No Admissions or Waivers | 25 |
|  | 12.9 | Notices/Service | 25-26 |
| XIII. |  | RETENTION OF JURISDICTION | 26-27 |

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

IN RE:

CASE NO: 18-61316

KBC ENTERPRISE LLC
(a/k/a KBC DISTRIBUTING and
a/k/a D.R. JONES DISTRIBUTING)

CHAPTER 11

DEBTOR IN POSSESSION

---

## DEBTOR'S PLAN OF REORGANIZATION UNDER
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

---

Comes KBC Enterprise LLC ("Debtor"), as debtor and debtor in possession in the above-captioned bankruptcy case, and pursuant to 11 U.S.C. §§ 1121, 1123, and 1129, and Fed. R. Bankr. P. 3016, hereby proposes the following Plan of Reorganization (the "Plan") for the resolution of the Claims against and Equity Security Interests in the Debtor.

## ARTICLE I

## DEFINITIONS, RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

1.1    **Defined Terms.**  All capitalized terms used herein and not otherwise defined have the meanings given to them in the Definitions set forth in this Section, or if not defined in this Section, then as defined in the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless the context clearly requires otherwise:

1.1.1.  **"Administrative Claim"** shall mean a Claim for costs and expenses of administration allowed under 11 U.S.C. §§ 503(b), including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises), including Claims under any Orders (for any adequate protection rights granted which proved to be inadequate); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under 11 U.S.C. §§ 328, 330(a), or 331; (c) Claims for reclamation allowed in accordance with 11 U.S.C. § 546(c)(2); (d) any Claims pursuant to 11 U.S.C. § 503(b)(9) for the value of goods received by the Debtor in the twenty (20) days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of business; and (e) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930.

1

1.1.2.  **"Allowed Administrative Claim"** shall mean an Administrative Claim for which the Bankruptcy Court has entered a Final Order allowing such Claim as an Administrative Claim, provided that a request for payment of an Administrative Claim is filed with the Bankruptcy Court prior to thirty (30) days after the Confirmation Date of the Plan unless otherwise provided in the Plan.

1.1.3.  **"Allowed Claim**" shall mean:  (a) a Claim allowed by a Final Order; or (b) a Claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment no objection has been made within the time allowed for the making of objections.  Interest accrued after the Petition Date of the Bankruptcy Case shall not be part of any Allowed Claim against the Debtor, except as required under the Plan or permitted by law.

1.1.4.  **"Assets"** shall mean, with respect to the Debtor, all of the right, title, and interest in and to property of whatsoever type or nature, owned by the Debtor as of the Effective Date, as well as the proceeds, products, rents and profits from all of the foregoing. Assets include, but are not limited to, property as defined in 11 U.S.C. § 541 (each identified item of property being herein sometimes referred to as an "Asset").

1.1.5.  **"Avoidance Actions"** shall mean any Claims or Causes of Action arising under or authorized by 11 U.S.C. §§ 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553, including applicable state law claims, that belong to the Debtor, the Debtor in Possession, or its Estate.

1.1.6.  **"Bankruptcy Case"** shall mean, as to the Debtor, its case filed in this Court under Chapter 11 of the Bankruptcy Code, Case No. 18-61316.

1.1.7.  **"Bankruptcy Code"** or **"Code**" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as in effect from time to time.

1.1.8.  **"Bankruptcy Court"** or **"Court"** shall mean the United States Bankruptcy Court for the Eastern District of Kentucky.

1.1.9.  **"Bankruptcy Rules"** shall mean the Federal Rules of Bankruptcy Procedure and Local Rules applicable to cases pending before the Bankruptcy Court ("Local Rules"), as the same may from time to time be in effect and applicable to proceedings under the Plan.

1.1.10. **"Bar Date"** shall mean the final date for filing proofs of claim as ordered by the Bankruptcy Court if any or, if none, pursuant to KYEB LBR 3003-1, a proof of claim shall be deemed timely if filed prior to the date first set for the hearing on approval of the Disclosure Statement.

2

1.1.11. **"Business Day"** shall mean a day other than a Saturday, Sunday, or "legal holiday" as defined by Fed R. Bankr. P. 9006(a).

1.1.12. **"Cash"** means legal tender of the United States of America and equivalents thereof.

1.1.13. **"Causes of Action"** shall mean, without limitation, any and all actions (including Avoidance Actions), liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever of the Debtor, the Debtor in Possession, or its Estate, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Bankruptcy Case, including through the Effective Date.

1.1.14. **"Claim"** shall mean "claim" as defined in 11 U.S.C. § 101(5), if such claim against the Debtor was in existence on or as of the Petition Date.  The term Claim, when preceded by a reference to a Class of Claims, shall mean a Claim of that Class.

1.1.15. **"Confirmation"** shall mean confirmation of the Plan pursuant to 11 U.S.C. § 1129, which shall occur upon entry of the Confirmation Order.

1.1.16. **"Confirmation Date"** shall mean the date on which the Bankruptcy Court enters the Confirmation Order.

1.1.17. **"Confirmation Hearing"** shall mean the Bankruptcy Court's hearing on confirmation of the Plan, as such hearing may be continued from time to time.

1.1.18. **"Confirmation Order"** shall mean the order of the Bankruptcy Court confirming the Plan with such modifications as may be agreed to or approved prior to the Effective Date by the Debtor.

1.1.19. **"Creditor"** shall mean the owner or holder of a Claim.

1.1.20. **"Cure Claim"** shall mean a Claim based upon the Debtor's defaults pursuant to an Executory Contract or Unexpired Lease at the time such Contract or Lease is assumed under 11 U.S.C. § 365.

1.1.21. **"Debt"** shall mean the amount of indebtedness owed to any Creditor as of the Petition Date, contingent or otherwise, limited to principal and interest at the non-default contract rate, and, in the case of any Secured Creditor whose Claim is wholly Allowed, interest calculated postpetition at the lower of:  (a) the non-default contract rate, or (b) such rate as is provided in the Plan.  "Debt" also includes any obligation under a lease or executory contract.  "Debt" does not include late fees, penalties, costs, attorney

fees, or other similar items except as may be included in an Allowed Claim as determined by agreement or by the Court.

1.1.22. **"Debtor"** and **"Debtor in Possession"** shall mean KBC Enterprise LLC.

1.1.23. **"Deficiency Claim"** shall mean the Unsecured portion of a Secured Claim as determined by 11 U.S.C. § 506(a).

1.1.24. **"Dippin' Dots Franchise Agreement"** shall mean the franchise agreement by and between the Debtor and Dippin' Dots, L.L.C.

1.1.25. **"Disallowed Claim"** shall mean a Claim, or any portion thereof, that has been: (a) disallowed by a Final Order; (b) withdrawn by a Creditor; (c) scheduled as contingent, disputed, or unliquidated, and as to which no Proof of Claim has been timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court; or (d) not otherwise deemed timely filed under applicable law or the provisions of a confirmed Plan.

1.1.26. **"Disclosure Statement"** shall mean the Disclosure Statement proposed by the Debtor and filed in the Bankruptcy Case, as it may be further amended, modified, or supplemented from time to time as provided therein, including all exhibits and schedules thereto.

1.1.27. **"Disclosure Statement Conditional Approval Order"** shall mean the Order of the Bankruptcy Court which conditionally approved the Disclosure Statement, and scheduled the final hearing for approval along with the Plan Confirmation hearing.

1.1.28. **"Disputed Claims"** shall mean:

a.     A Claim that is listed on the Debtor's schedules as either disputed, contingent, or unliquidated;

b.     A Claim that is listed on the Debtor's Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted by the holder varies from the nature or amount of such Claim as is listed on the Schedules;

c.     A Claim that is not listed on the Debtor's Schedules;

d.     A Claim as to which the Debtor, or any other party in interest, has filed an objection by the Claims Objection Bar Date and such objection has not been withdrawn or denied by a Final Order; or

e.     A Tort Claim.

4

1.1.29. **"Distribution"** shall mean the transfer of funds or other property of the Debtor's Estate as payment towards a Creditor's Claim pursuant to the terms set forth herein.

1.1.30. **"Effective Date"** shall mean fifteen business (15) days from the date the Confirmation Order becomes a Final Order.

1.1.31. **"Equity Membership Interests"** shall mean such interests as are included in the definition of "equity security" in 11 U.S.C. § 101(16), and in this case, shall mean the membership interests as they existed on the Petition Date.

1.1.32. **"Equity Security Holder"** shall have the definition set forth in 11 U.S.C. § 101(17).

1.1.33. **"Estate"** shall mean, as to the Debtor, the estate created in the Debtor's Bankruptcy Case pursuant to 11 U.S.C. § 541.

1.1.34. **"Executory Contract"** shall mean a contract to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under 11 U.S.C. § 365.

1.1.35. **"Exit Loan"** shall mean the up to $350,000 loan with equity option Dean Holland shall make to the Reorganized Debtor to close within 10 business days of the Confirmation Date, under such documents as the parties agree.  The Exit Loan shall be secured by a junior lien on all assets of the Reorganized Debtor, subordinate to the prepetition existing liens.

1.1.36. **"Final Order"** shall mean an order or judgment of a court of competent jurisdiction which:  (a) shall not have been reversed, stayed, modified, or amended, and the time to appeal from, or to seek review or rehearing of, shall have expired, and as to which no appeal or petition for review, rehearing, or certiorari is pending, or (b) if appealed from, shall have been affirmed and no further hearing, appeal, or petition for certiorari may be taken or granted.

1.1.37. "**Impaired**" shall mean, with respect to a Class or a Claim, that such Class or Claim is impaired within the meaning of 11 U.S.C. § 1124.

1.1.38. **"Person"** shall mean any individual, corporation, limited liability company, or partnership, general partnership, limited partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, governmental unit or any political subdivision thereof, or any other entity.

5

1.1.39. **"Petition Date"** shall mean October 22, 2018 being the date of the filing of the voluntary petition for relief by the Debtor under Chapter 11 of the Bankruptcy Code.

1.1.40. **"Plan"** shall mean this Plan proposed by the Debtor and filed in the Bankruptcy Case, as it may be further amended, modified, or supplemented from time to time as provided therein.

1.1.41. **"Priority Claim"** shall mean a Claim entitled to priority pursuant to 11 U.S.C. § 507(a) other than an Administrative Claim.

1.1.42. **"Priority Tax Claim"** shall mean a Claim entitled to priority pursuant to 11 U.S.C. § 507(a)(8).

1.1.43. **"Professional Claims"** shall mean the allowances made by the Court to the Professionals, each of which allowance shall be an Administrative Claim.

1.1.44. **"Professionals"** shall mean all professional Persons properly retained by the Debtor and approved by the Court under the Bankruptcy Code who performed professional services for or on behalf of the Debtor from the Petition Date through and including the Confirmation Date.

1.1.45. ***"Pro rata"*** shall mean ratable payment, without preference proportionate to all other Allowed Claims in the particular Class or other specified group of Claims.

1.1.46. **"Reorganized Debtor"** shall mean the Debtor on and/or after the Confirmation Date.

1.1.47. **"Schedules"** shall mean those schedules and statements of financial affairs filed by the Debtor under 11 U.S.C. § 521 and Fed. R. Bankr. P. 1007, as may be amended from time to time.

1.1.48. **"Secured Claim"** shall mean:  (a) a Claim secured by a Lien on property of the Debtor, which Lien is valid, superior, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in the Debtor's Bankruptcy Case, but only to the extent that such Claim does not exceed the value of the Debtor's Assets which the Bankruptcy Court finds are valid collateral for such Claim (except, if the class of which such Claim is a part makes the election provided for in 11 U.S.C. § 1111(b)(2), the entire amount of the Claim shall be a Secured Claim); and (b) a Claim allowed under the Plan as a Secured Claim.

1.1.49. **"Secured Creditor"** shall mean the owner or holder of a Secured Claim.

6

1.1.50. **"Slush Puppie License Agreement"** shall mean license agreement by and between the Debtor and Slush Puppie Frozen Drink Division of The Icee Company.

1.1.51. **"Tax Claims"** shall mean Claims of any Person for the payment of taxes: (a) accorded priority pursuant to 11 U.S.C. §§ 507(a)(2) and (8); or (b) those secured by valid Liens on Assets of the Debtor as of the Confirmation Date.

1.1.52. **"Tax Creditor"** shall mean the holder of a Tax Claim.

1.1.53. **"Tort Claims"** shall mean any claim that has not been settled, compromised or otherwise resolved that arises out of allegations of personal injury, wrongful death, property damage, products liability, or similar legal theories of recovery.

1.1.54. **"Unexpired Lease"** shall mean a lease to which the Debtor is a party that is subject to assumption, assumption and assignment, or rejection under 11 U.S.C. § 365.

1.1.55. **"Unsecured Claims"** shall mean all Claims held by Creditors of the Debtor, including Deficiency Claims and Claims arising out of the rejection of Executory Contracts and/or Unexpired Leases, other than Secured Claims, Administrative Claims, Cure Claims, Priority Claims, Priority Tax Claims, and Insider Loan Claims.

1.1.56. **"Unsecured Creditor"** shall mean the owner or holder of an Unsecured Claim.

1.2    **Rules of Construction.**  The rules of construction used in 11 U.S.C. § 102 shall apply to the construction of this Plan.

1.3    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II

## GENERAL OVERVIEW OF THE PLAN

The Plan contemplates the continued business operations of the Debtor as the "Reorganized Debtor" following confirmation. The Plan provides for the repayment of Allowed Claims, in varying amounts based on security and priority, over a 5 year plan term, except for long-term secured indebtedness which will be repaid in full under its existing terms with an adjusted maturity. In conjunction with emerging from chapter 11 as the Reorganized Debtor, Debtor has a commitment for the Exit Loan, which is secured by a lien junior to existing liens, and with an option to convert same to a 19% equity interest after the initial 12 months of the Loan, at the Lenders discretion. The Exit Loan will assure adequate funds for both operations and for needed liquidity to support the Reorganized Debtor in making repayments to creditors as called for within the Plan. Debtor believes that this provides a reasonable and conservative approach to its

7

emergence from Chapter 11, while providing some fresh capital to alleviate ongoing risk of feasibility in making the projected Plan repayments over the Plan Term.

THIS GENERAL SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE SPECIFIC PROVISIONS OF THE PLAN AS SET FORTH HEREIN WHICH GOVERN.

## ARTICLE III

### TREATMENT OF UNCLASSIFIED CLAIMS

3.1    **United States Trustee Fees.** All fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 shall be paid on or before the Effective Date of the Plan and in the ordinary course when due. Following Confirmation, the Reorganized Debtor's obligation to pay United States Trustee fees shall continue until the Bankruptcy Case is converted, dismissed, or closed, whichever occurs first, and said fees will be paid by the Reorganized Debtor in the ordinary course as they are incurred, with all fees to be paid before the Bankruptcy Case may be closed. The Reorganized Debtor shall also timely file and serve all reports required by the U.S. Trustee.

3.2    **Ordinary Course Administrative Claims.** Allowed Administrative Claims arising from obligations incurred by the Debtor in the ordinary course of its business prior to the Confirmation Date, including Administrative Trade Claims, shall be paid and performed by the Reorganized Debtor in the ordinary course of business in accordance with the terms of any agreements governing, instruments evidencing, or other documents relating to such transactions. The Debtor believes that all or most of the "ordinary course" postpetition Administrative Claims are current and is unaware of any significant past due unpaid balances accruing postpetition. Each such Allowed Claim shall be paid in full as agreed by the parties, or upon Confirmation or Claim Allowance, whichever occurs later, unless otherwise agreed.

3.3    **Other Allowed Administrative Claims.** All other holders of Allowed Administrative Claims, including Professional Claims and 11 U.S.C. § 503(b)(9) Allowed Claims, if any, shall be paid in full within 30 days following the Effective Date or as agreed by any such Allowed Creditor. Professionals shall retain any escrow funds in their possession to pay against their Allowed Claims. At present, the Debtor does not anticipate that there will be any other Allowed Administrative Claims, beyond those Allowed Administrative Claims for Professional fees and expenses, and that after allowance and application of escrow funds, that they will be paid in full following Confirmation as set forth in the Plan projections, over time.

3.4    **Bar Date for Administrative Claims.**

3.4.1    **Holders of Administrative Claims in Section 3.2.** Holders of Administrative Claims in Section 3.2 (Ordinary Course Administrative Claims) are not required to file or serve any request for payment, and will be paid in the ordinary course as due or pursuant

8

to agreement with the Reorganized Debtor.  Reorganized Debtor shall file any objection to same within 30 days following Confirmation, if any.

**3.4.2    All Other Entities Seeking Payment of an Administrative Claim.  All other entities seeking payment of an Administrative Claim, including Professionals, shall file their respective requests for allowance and payment thereof by no later than the date that is <u>thirty (30) days after the entry of the Confirmation Order</u> or such other date as may be fixed by an order of the Bankruptcy Court.  A proof of claim, without more, does not constitute a request for allowance of an Administrative Claim.  Holders of Administrative Claims that do not file and serve a request for allowance and payment by the bar date set forth in this Section <u>will be forever barred</u> from asserting such Claims; provided, however, that Administrative Claimants who have previously had their Claims Allowed by Court Order do not need to file any further Application or request for Allowance unless the amount they are seeking has increased subsequent to entry of said Order.  The Court shall retain jurisdiction to determine the amount and allowance of any such Claim if there is any dispute between the Reorganized Debtor and any Claimant.**

3.5    **Priority Tax Claims.**  Pursuant to 11 U.S.C. § 1129(a)(9)(C), unless otherwise agreed by the holder of a Priority Tax Claim and the Reorganized Debtor, each Tax Creditor shall be paid in deferred cash payments over the 5 years from the order for relief in accordance with 11 U.S.C. Section 1129 in full satisfaction of its Allowed Priority Tax Claim.  No payments will be made on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim unless expressly agreed or ordered by this Court. A chart describing each of the Priority Tax Claims against the Debtor as of the Petition Date is attached to the Disclosure Statement as Exhibit C.

3.6    **Other Allowed Priority Non-Tax Claims.**  As soon as practicable after the later of the Effective Date and the date the Claim becomes an Allowed Claim, each holder of an Allowed Priority Non-Tax Claim against a Reorganized Debtor will receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Non-Tax Claim a Distribution from the applicable Reorganized Debtor: (i) in Cash equal to the unpaid portion of such Allowed Priority Non-Tax Claim against the Debtor, or (ii) in such amounts and on such other terms as may be agreed between the holder of the Allowed Priority Non-Tax Claim and the Debtor, or (iii) in accordance with the terms of the particular agreement under which such Priority Non-Tax Claim arose.  To the extent that any Creditor's total Allowed Priority Non-Tax Claim exceeds the amount entitled to Priority treatment under 11 U.S.C. § 507, the remaining amount of such Claim shall be treated as a Class 10 Allowed Unsecured Claim.  Debtor takes the position that there are no such allowed claims; however, several former employees have made allegations that they hold some type of claim, which Debtor listed in Schedule E as disputed priority claims.

3.7    **Post-Confirmation Professional Claims.**  Post-Confirmation Professional Claims will not require Bankruptcy Court approval and will be paid post-Confirmation in the ordinary course from the Reorganized Debtor's business operations and funds on hand.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following classes are hereby designated under this Plan:

4.1 **Class 1:  Allowed Secured Claim of BizCapital BIDCO I, L.L.C.** Class 1 consists of the Allowed Secured Claim of BizCapital BIDCO I, L.L.C. ("BizCap") in the total approximate amount of $1,404,772 as of the Petition Date, plus interest from the Petition Date through the Confirmation Date at the rate set forth in the loan documents underlying the Class 1 Claim, plus other applicable costs of collection as provided in its loan documents, less all payments received by BizCap on or before the Confirmation Date.  The exact Allowed Amount will be determined by Agreed Order or Order of the Court. The Class 1 Claim is comprised of indebtedness in the original principal amount of $1,292,000 that was incurred by the Debtor on or about September 2, 2016 which amount was subsequently increased to $1,642,000 by an amendment executed in 2018.  The Class 1 Claim is secured by a first lien UCC-1 filing on "all assets" of the Debtor and by a mortgage lien against the real property/raw land owned by the Debtor and more commonly known as Hawk Creek Road, London, Kentucky 40743 MB 1127/P213.  The Class 1 Claim is further secured by a mortgage on the Carpenters' home at 160 Hauselman Road, London, MB 1127/P194, who are guarantors on the indebtedness. The Class 1 Claim is treated as fully secured.  The Claim is backed by an SBA guarantee, SBA Loan #86955150-04. The Class 1 Claim against the Debtor will be hereinafter referred to as the "Class 1 Claim."

4.2 **Class 2:  Allowed Secured Claims of Ally Financial.**  Class 2 consists of the Allowed Secured Claims of Ally Financial ("Ally") consisting of the secured portions of the total approximate amount of $75,000 of collective total indebtedness as of the Petition Date, less all payments received by the Class 2 Claimant on or before the Confirmation Date. The Class 2 Claims are Impaired.  The exact Allowed Secured Amounts will be determined by Agreed Order or Order of the Court. The Class 2 Claims are collectively comprised of the secured portion of the indebtedness reflected in the following three vehicle loans: (i) indebtedness in the original principal amount of approximately $37,875.34 that was incurred by the Debtor on September 30, 2015, (ii) indebtedness in the original principal amount of approximately $41,224.34 that was incurred by the Debtor on June 30, 2015, and (iii) indebtedness in the original principal amount of approximately $38,659.74 that was incurred by the Debtor on April 21, 2015.  The Class 2 Claims are secured, respectively, by the following vehicles: (i) 2015 Chevrolet Express VIN 1GB3G3CG7F124934, (ii) 2015 Chevrolet Express VIN 1GB3G3CG9F1208257 and (iii) 2015 Chevrolet Express VIN 1GB3G3CG0F1128880.  The Class 2 Claims against the Debtor will be hereinafter referred to as the "Class 2 Claims."  The remainder of the Ally indebtedness which exceeds the Secured Claims Amounts is a Class 10 Unsecured Claim.

4.3 **Class 3:  Allowed Secured Claims of The Huntington National Bank.** Class 3 consists of the Allowed Secured Claims of The Huntington National Bank ("HNB") in the total

approximate amount of $28,000 as of the Petition Date, plus interest and any other applicable costs of collection as provided in its loan documents, less all payments received by the Class 3 Claimant on or before the Confirmation Date. The Class 3 Claims are Impaired. The exact Allowed Secured Amounts will be determined by Agreed Order or Order of the Court. The Class 3 Claims are collectively comprised of the following two vehicle loans: (i) indebtedness in the original principal amount of approximately $55,125.37 that was incurred by the Debtor on or about July 26, 2014, and (ii) indebtedness in the original principal amount of approximately $23,885.56 that was incurred by the Debtor on or about April 15, 2014. The Class 3 Claims are secured, respectively, by the following vehicles: (i) 2014 Ford F-150 VIN and (ii) 2013 Ford Transit Connect VIN 64767. The Class 3 Claims against the Debtor will be hereinafter referred to as the "Class 3 Claims."

4.4     **Class 4:   Allowed Secured Claim of Kentucky Highlands Investment Corporation.**   Class 4 shall consist of the Allowed Secured Claim of Kentucky Highlands Investment Corporation ("KHIC") in the total amount of $1.00. The Class 4 Claim is Impaired. KHIC has a recorded UCC-1 on "all assets" of the Debtor, but there is no value to associate with the lien as it is inferior to other creditors. The remaining KHIC Claim in the amount of approximately $91,700 is a Class 10 Unsecured Claim. The Class 4 Claim against the Debtor will be hereinafter referred to as the "Class 4 Claim."

4.5     **Class 5:  Allowed Secured Claim of On Deck Capital, Inc.** Class 5 consists of the Allowed Secured Claim of On Deck Capital, Inc. ("On Deck") in the total approximate amount of $1.00. The Class 5 Claim is Impaired. On Deck has a recorded UCC-1 on "all assets" of the Debtor, but there is no value to associate with the lien as it is inferior to other creditors. The remaining On Deck Claim in the amount of approximately $126,000 is a Class 10 Unsecured Claim. The Class 5 Claim against the Debtor will be hereinafter referred to as the "Class 5 Claim."

4.6     **Class 6:   Allowed Secured Claim of Action Capital Corporation.**   Class 6 consists of the Allowed Secured Claim of Action Capital Corporation ("Action") in the total current amount of approximately $80,000, which consists of the remaining balance due on the Prepetition Claim, along with the postpetition factoring balance due, and includes all payments received by Action through the Confirmation Date. The exact Allowed Amount will be determined by Agreed Order or Order of the Court. The Class 6 Claim is secured by a UCC-1 filing on all factored accounts of the Debtor including proceeds. The Class 6 Claim is also secured by the reserve account held by Action. The Class 6 Claim against the Debtor will be hereinafter referred to as the "Class 6 Claim."

4.7     **Class 7:  Allowed Secured Tax Claim of the Internal Revenue Service.** Class 7 consists of the Allowed Secured Tax Claim of the Internal Revenue Service ("IRS") for various taxes owed for tax years 2016, 2017 and 2018 in the total Allowed Amount of $236,204.32 as of the Petition Date, less adequate protection payments received through June 2019 of $7,000, for an Allowed Secured Claim at the Confirmation Date of $229,204.32. The Class 7 Claim is Impaired. The Class 7 Claim is secured by a recorded tax lien on all of the Debtor's assets, 2nd in priority to the preexisting BizCap Lien, and as agreed to be subordinated on accounts receivable under the

11

Cash Collateral Orders and IRS subordination agreements.  The Class 7 Claim against the Debtor will be hereinafter referred to as the "Class 7 Claim."

4.8     **Class 8:  Allowed Claim of Farnam Street Financial, Inc.**  Class 8 consists of the Allowed Claim of Farnam Street Financial, Inc. ("Farnam") in the total approximate amount of $392,236.43 as of the Petition Date less all payments received by Farnam by the Effective Date. The Class 8 Claim is Impaired.  The Class 8 Claim arises from a judgment related to the lease of specific equipment, which Farnam asserts that it owns and which is still in Debtor's possession, consisting of freezers and other listed equipment, machinery and parts as described in the lease (collectively the "Farnam Equipment").   The value of the Farnam Equipment is unknown but is needed in Debtor's operations.  The Class 8 Claim against the Debtor will be hereinafter referred to as the "Class 8 Claim."

4.9     **Class 9:  Allowed Other Secured Claims.**  Class 9 shall consist of all other Secured Claims, if any, excluding the Class 1-7 Secured Claims.  The Class 9 Claims are Impaired. There are no known claims in this Class

4.10    **Class 10:  Allowed General Unsecured Claims.**  Class 10 shall consist of the Allowed Unsecured Claims against the Debtor other than unclassified Claims, Cure Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Claims and Equity Interests.

4.11    **Class 11:  Equity Membership Interests in the Debtor.**  Class 11 consists of those Persons holding the prepetition equity membership Interests in the Debtor, being Carlos "Doc" Carpenter 50% interest and Karen Carpenter 50% interest.  The Class 11 Claims are Impaired.

## ARTICLE V

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

On the respective dates set forth herein, or as soon as practicable following the date a classified Claim becomes an Allowed Claim,[1] whichever is later, the Reorganized Debtor shall make the following payments, undertake the considerations hereinafter set forth, and be obligated with respect to such Claims, as follows:

5.1     **Class 1:  Allowed Secured Claim of BizCap.** The Allowed Amount of the Class 1 Claim will be paid pursuant to the following terms:

5.1.1   **Retention of Liens.**  BizCap will retain its lien on all of the Debtor's assets and its mortgages securing the Allowed Amount of the Class 1 Claim until paid in full as set forth herein.

5.1.2   **Payment of Class 1 Claim.**  In full and complete satisfaction of the

---

[1] The Reorganized Debtor reserves all rights to object to all claims of any Class.

Allowed Class 1 Claim, the holder of the Allowed Class 1 Claim shall resume receipt of its regular prepetition monthly loan payments of $16,653 per month from the Reorganized Debtor over the current term of the loan, at the same interest rate currently contained in the loan documents (prime rate plus 0.85%), with a balloon or refinancing of the remaining balance due at the current maturity date of the Class 1 loan, which is September, 2026. The existing loan documents between BizCap and the Debtor may be (but are not required to be) modified and amended to reflect these new terms, and the Reorganized Debtor is authorized to enter into same following confirmation without further order of the Court. The Reorganized Debtor may prepay the Class 1 Claimant at any time without penalty.

5.2    **Class 2:  Allowed Secured Claims of Ally.** The Allowed Secured Amount of the Class 2 Claims will be paid pursuant to the following terms:

5.2.1    **Retention of Liens.** Ally will retain its liens on the respective vehicles that secure the Allowed Secured Amounts of the Class 2 Claims until paid in full on the Secured Claims as set forth herein.

5.2.2    **Payment of Class 2 Claims.** In full and complete satisfaction of the Allowed Secured Amounts of the Class 2 Claims, Ally will be paid $1,050 per month collectively ($350 per month per vehicle) until paid in full on the Allowed Secured Amounts for each vehicle. The Reorganized Debtor may prepay the Class 2 Claims and any one of them at any time without penalty.

5.2.3    **Remainder of Class 2 Claimant's Indebtedness**. The remaining Deficiency Claim of the Class 2 Claimant is an Allowed Class 10 Claim.

5.3    **Class 3:  Allowed Secured Claims of HNB.** The Allowed Amount of the Class 3 Claims will be paid pursuant to the following terms:

5.3.1    **Retention of Liens.** HNB will retain its liens on the respective vehicles that secure the Allowed Secured Amounts of the Class 3 Claims until paid in full as set forth herein.

5.3.2    **Payment of Class 3 Claims.** In full and complete satisfaction of the Allowed Amount of the Class 3 Claims, HNB will be paid $580 per month (collectively) up to the full value of the Allowed Secured Claim amounts for each vehicle. The Reorganized Debtor may prepay the Class 3 Claims and any of them at any time without penalty.

5.3.3    **Remainder of Class 3 Claimant's Indebtedness**. The remaining Deficiency Claim of the Class 3 Claimant is an Allowed Class 10 Claim, as is Claimant's indebtedness as reflected in its POC No. 16 and 17.

5.4    **Class 4:  Allowed Secured Claim of KHIC.** The Allowed Amount of the Class 4 Claim will be paid pursuant to the following terms:

13

5.4.1 **Avoidance of Lien.** KHIC's recorded lien will be released by Claimant by the filing of a UCC-3 statement, and said lien shall not survive confirmation. If Claimant does not file a termination statement, the Reorganized Debtor is authorized to do so.

5.4.2 **Payment of Class 4 Claim.** In full and complete satisfaction of the Allowed Amount of the Class 4 Claim, the Allowed Amount of $1.00 will be paid by Debtor on the Effective Date.

5.4.3 **Remainder of Class 4 Claimant's Indebtedness**. The remaining Deficiency Claim of the Class 4 Claimant is an Allowed Class 10 Claim.

5.5 **Class 5:  Allowed Secured Claim of On Deck.** The Allowed Amount of the Class 5 Claim will be paid pursuant to the following terms:

5.5.1 **Avoidance of Lien.** On Deck's recorded lien will be released by Claimant by the filing of a UCC-3 statement, and said lien shall not survive confirmation. If Claimant does not file a termination statement, the Reorganized Debtor is authorized to do so.

5.5.2 **Payment of Class 5 Claim.** In full and complete satisfaction of the Allowed Amount of the Class 5 Claim, the Allowed Amount of $1.00 will be paid by Debtor on the Effective Date.

5.5.3 **Remainder of Class 5 Claimant's Indebtedness**. The remaining Deficiency Claim of the Class 5 Claimant is an Allowed Class 10 Claim.

5.6 **Class 6: Allowed Secured Claim of Action:** The Allowed Amount of the Class 6 Claim will be paid in full pursuant to the following terms:

5.6.1 **Retention of Lien.** Action will retain its lien on the Debtor's factored accounts and proceeds thereof which secure the Allowed Amount of the Class 6 Claim until paid in full as set forth herein.

5.6.2 **Payment of the Class 6 Claim.** In full and complete satisfaction of the Allowed Amount of the Class 6 Claim, at the conclusion of the factoring arrangement between the Reorganized Debtor and the Class 6 Claimant, the Claimant will apply its reserve balance to the Allowed Amount of the Claim, apply all the proceeds from the factored accounts, and thereafter, Action will receive monthly payments on the Allowed Claim over the Plan Term until paid in full.

5.7 **Class 7: Allowed Secured Claim of IRS:** The Allowed Amount of the Class 7 Claim will be paid in full pursuant to the following terms:

5.7.1 **Retention of Lien.** IRS will retain its lien on the Debtor's property until paid in full, subject to any ongoing subordination agreements entered into either prior to or following Plan Confirmation.

14

      5.7.2   **Payment of the Class 7 Claim.**  In full and complete satisfaction of the Allowed Amount of the Class 7 Claim, IRS shall receive 52 equal monthly payments, at 6.00% interest, in the amount of $5,016.54 per month for the 52 months following Plan Confirmation until paid in full.

      5.8    **Class 8: Allowed Claim of Farnam:**  The Allowed Amount of the Class 8 Claim will be paid in full pursuant to the following terms:

      5.8.1   **Payment of the Class 8 Claim.**  In full and complete satisfaction of the Allowed Amount of the Class 8 Claim, Farnam shall receive a lump sum payment of $30,000 within 30 days following the Confirmation Date in exchange for transfer of ownership of the Farnam Equipment to the Reorganized Debtor at the time said payment is received.  The remainder of the Allowed Amount will be treated as a Deficiency Claim under the Class 10 Allowed General Unsecured Claims, and Farnam agrees to and shall vote the Class 10 Claim in favor of the Plan.

      5.9    **Class 9: Other Secured Claims.**  In satisfaction of the Allowed Secured Claim of any Class 9 Claimant, if any, the Debtor shall either:  (i) surrender the collateral to the Claimant to allow it to liquidate said collateral at its discretion; or (ii) pay the amount of such Allowed Secured Claim to the Class 9 Creditor over time during the life of the Plan.

      5.10   **Class 10: Allowed General Unsecured Claims.**  In full satisfaction of the Allowed General Unsecured Claims, each holder of an Allowed Claim in Class 10 shall receive pro rata distributions equal to its proportionate share of the entire class, paid quarterly, over the 5 year Plan Term at $1,500 per quarter for 20 quarters/5 years, without interest.  The Reorganized Debtor will issue the quarterly distribution checks each quarter on the first of the months of January, April, July and October, with the first payments being made on October 1, 2019.

      5.11   **Class 11:  Equity Membership Interests in the Debtor.**  Carlos "Doc" Carpenter and Karen Carpenter will continue to hold their interests in the Reorganized Debtor; provided, however, that the Exit Loan contains an option to convert the loan balance at the end of year one to a 19% equity interest, at the discretion of the Exit Lender.  There will be no dividends, no member distributions, or any other payments to or on account of the Equity Membership Interests (except for the normal salary (guaranteed payment) to Doc Carpenter in the ordinary course) unless and until all other Allowed Claims have been paid in full over the Plan Term.

      5.12   **Valuation of Secured Claims.**  Under 11 U.S.C. § 506, if any dispute over valuation occurs with any Secured Creditor, the Debtor reserves the right to request that the Court determine the value of the Creditor's interest in the collateral which secures the Creditor's Claim.

## ARTICLE VI

## MEANS OF IMPLEMENTATION OF PLAN

6.1    **General Description of Means of Implementation.** The Debtor will continue to operate post-Confirmation as the Reorganized Debtor in the ordinary course of business, receiving ongoing income from its operations and using all income to pay its customary operating expenses, necessary capital expenditures, and Plan payments.

The Debtor has the commitment from an exit lender, Dean Holland, to make an exit loan to the Reorganized Debtor at a closing to be held within 10 business days following confirmation. The Exit Loan is for the total sum of up to $350,000, to be secured by a junior lien on all assets, subordinate to the prepetition existing liens. The Exit Loan is repayable monthly at "interest only" for the first 12 months of the Plan Term, as set forth in the Plan Payments Chart attached hereto as **Exhibit A**. The Exit Loan contains an option to convert the balance of the indebtedness to an equity interest at the Lender's sole discretion at the 12 months following the closing of the Exit Loan. The Reorganized Debtor will use the Exit Loan funds obtained as described in the Plan Payments Chart.

6.2    **Vesting of the Debtor's Assets.** At the Confirmation Date, all Assets of the Debtor and the Estate, including all Avoidance Actions and Causes of Action will revest in and remain with the Reorganized Debtor, free and clear of all liens, claims, interests, and encumbrances, except for those liens provided for in the Plan. If the Reorganized Debtor liquidates any of its Assets which remain subject to a lien post-Confirmation, then it will seek the consent of any Creditor holding a lien upon the particular Asset. If the Secured Creditors and the Reorganized Debtor cannot agree to the terms for a private, ordinary-course sale, then the Reorganized Debtor may seek authority for any such sale from this Court. The Reorganized Debtor and its Assets will remain subject to the jurisdiction of this Court until the Bankruptcy Case is closed or dismissed.

6.3    **Funding the Plan.** The Reorganized Debtor will fund the Plan payments to Creditors in the ordinary course and according to the Plan treatment terms from post-Confirmation net profits, as well as from the Exit Loan. Under the Plan, Confirmation of the Plan shall be deemed approval of the Exit Loan in accordance with such written documentation as is necessary and standard, subject to ongoing Court oversight only in the event the Exit Loan terms change at or prior to Closing following Confirmation. As of the Effective Date, and as long as the Reorganized Debtor continues operation, the Reorganized Debtor shall have the right to collect and use all of its revenues for operations in accordance with the Plan repayment terms. The Reorganized Debtor is authorized to execute such Exit Loan documents as are standard and necessary without any further order of this Court.

6.4    **Quarterly Reports.** The Reorganized Debtor will file United States Trustee quarterly reports until such time as its Bankruptcy Case is closed, converted, or dismissed, whichever occurs first.

6.5    **Continued Engagement of Professionals.** The Reorganized Debtor shall continue the engagement of DelCotto Law Group PLLC, Wilson CPA, PLLC and such other professionals as may be necessary for the purposes of rendering services in connection with implementing the

Plan, resolving Claims, and performing routine post-Confirmation Chapter 11 administration, such as final reporting and moving to have the Bankruptcy Case closed upon substantial completion of the Plan. Post-Confirmation, any professional services will not require Court approval.

   6.6  **Ordinary Course Operations.** The Debtor will continue to operate following Confirmation in the ordinary course as the Reorganized Debtor, subject to the continuing jurisdiction and supervision of this Court until its case is closed.

   6.7  **Parties Responsible for Implementation of the Plan.** Upon Confirmation, the Plan provides that Carlos "Doc" Carpenter, acting as Manager of the Reorganized Debtor, will continue to manage the Debtor's operations, subject to the terms of the Plan.  Mr. Carpenter will have the authority to take all actions desirable in his business judgment to continue the operations of the Reorganized Debtor, including implementation of the Plan and administration of the Debtor's Estate.  For these duties, Mr. Carpenter will continue to receive his normal compensation of $78,000 as "guaranteed payments", plus reimbursement of ordinary expenses.

   6.8  **Vesting and Prosecution of Claims and Causes of Action.** The Debtor's rights, duties, and obligations to investigate, prosecute, and collect all of the Debtor's and the Estate's Causes of Action and to pursue Avoidance Actions shall pass to and vest in the Reorganized Debtor as of the Effective Date.  The Reorganized Debtor may, but shall not be required to, prosecute any Avoidance Action in its sole discretion.

   6.9  **Notice of Default/Cure Period.** In the event of any alleged default under the Plan, any affected Creditor must give a written default notice to the Reorganized Debtor with a copy of said notice emailed to the counsel of record for the Debtor, specifying the nature of the default. The Reorganized Debtor shall have fifteen (15) days to cure such default from the first date the Reorganized Debtor receives the default notice.  If such default has not been cured within the 15-day cure period, then the Claimant shall have the right to seek whatever remedies may be available to the Claimant, without first obtaining Bankruptcy Court approval.

   6.10  **Retiree Benefit Plans.** There are no qualified retiree benefit plans as established by 11 U.S.C. § 1114, and no such plans will be continued post-Confirmation.

## ARTICLE VII

### EXECUTORY CONTRACTS AND LEASES

   7.1  **Assumption, Assignment and/or Rejection.** The following terms shall govern the Debtor's assumption, assignment, and/or rejection of its respective Executory Contracts and/or Unexpired Leases:

     7.1.1  **Assumption of Certain Unexpired Leases.** The following Unexpired Leases shall be assumed by the Debtor upon Confirmation:  SEE EXHIBIT B to Disclosure Statement.

17

7.1.2    **Assumption of Certain Contracts.**    The following Contracts shall be assumed by the Debtor upon Confirmation:  SEE EXHIBIT B to Disclosure Statement.

7.1.3    **All Other Executory Contracts and/or Unexpired Leases.**    The Debtor reserves the right to apply to this Court at any time prior to Confirmation for authority to assume, assign, or reject any other Executory Contracts and/or Unexpired Leases beyond those referenced in Sections 7.1.1 and 7.1.2., in whole or in part as provided in 11 U.S.C. §§ 365 and 1123.  All remaining Executory Contracts and Unexpired Leases for which the Debtor has not specifically so moved on or before the Confirmation Date shall be deemed rejected as of said date (the "Rejection Date"); provided, however, that any such motions, requests, proceedings, or actions to seek to assume or reject, or to determine Allowed Cure Claims, pending at the Confirmation Date shall be continued until determined by Final Order of the Bankruptcy Court or other court of competent jurisdiction.

7.2    **Bar Date for Rejection Damages Claims.**    Any proof of claim that any third party has with respect to the rejection of any Unexpired Lease or Executory Contract must be filed no later than thirty (30) days after the later of:  (i) entry of a Final Order of this Court authorizing such rejection, or (ii) the Rejection Date.  Any such Claim for rejection damages shall be treated as a Class 10 Allowed General Unsecured Claim.

7.3    **Allowed Cure Claims on Assumed Unexpired Leases and/or Executory Contracts.**    If the Debtor applies for and receives the Court's authorization to assume an Unexpired Lease or Executory Contract as provided under 11 U.S.C. § 365, other than those Unexpired Leases and Executory Contract specifically addressed herein, then the contract/lease parties shall work to agree to any Cure Claim and repayment terms of same, and either party shall have thirty (30) days following Confirmation to seek allowance of a Cure Claim from the Bankruptcy Court, provided that the Court has not already entered an order specifying the Cure Claim terms.  If no such allowance of a Cure Claim is sought within that time period, all such Claims shall be barred.  However, if a Cure Claim is timely sought and thereafter Allowed by the Court, then the Debtor will then consult with the Claimant to negotiate a repayment of the Allowed Cure Claim over a reasonable period. If the parties are unable to reach agreement on the amount or repayment terms of a Cure Claim, it will be submitted to the Court for determination.   The Debtor and any Cure Claimant pay either submit agreed orders to the Court as to Cure payments, or the Cure Claim agreement may be reflected in the Confirmation Order.

7.4    **Repossession Deadline for Rejected Personalty.**    Unless a different time period is set forth in any separate order, the lessor of any equipment or other personal property deemed rejected under an Order of the Court or by virtue of Sections 7.1.1 and 7.1.2 above shall have thirty (30) days following the Rejection Date ("Repossession Date") in which to take possession of said equipment or property.  If said equipment or property is not taken by said lessor by the Repossession Date, then said equipment shall be deemed abandoned by lessor to the Reorganized Debtor, free and clear of any Liens, Claims, encumbrances, or interests which may be claimed by a lessor.

18

## ARTICLE VIII

## VOTING AND REQUEST FOR PLAN CONFIRMATION

8.1     **Voting Procedure.**  ACCEPTANCE OR REJECTION OF THE PLAN WILL BE DETERMINED, PURSUANT TO THE BANKRUPTCY CODE, BASED UPON THE BALLOTS OF THE CREDITORS HOLDING ALLOWED CLAIMS THAT ACTUALLY VOTE ON THE PLAN.  THEREFORE, IT IS IMPORTANT THAT CLAIMANTS EXERCISE ITS RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.  **For any class in which no votes are cast or received, and if there is no other objections to confirmation received from such class, then such non-voting classes are deemed to have accepted the Plan.**

8.2     **Classes Entitled to Vote on the Plan.**  All Creditors who have an Impaired Claim are entitled to vote to accept or reject the Plan.  Classes 1-10 may vote.   Class 11 is equity interests.

8.3     **General Provisions for Voting.**  Any Creditor holding a Claim that does not vote will not be counted in the percentage or number requirements for voting.  A Claim that has been objected to is not an Allowed Claim unless and until the Court rules on the objection.  The Court may temporarily set an amount for such an objected Claim for purposes of voting on the Plan.  The allowance or disallowance of any Claim for voting purposes does not necessarily mean that all or a portion of the Claim or interest will be allowed or disallowed for distribution purposes under the Plan.

8.4     **Requirement of Acceptance by One Class of Claims.**  As a condition of Confirmation, the Bankruptcy Code requires that each class of Claims that is impaired vote to accept the Plan, subject to the exception of 11 U.S.C. § 1129(b), which  requires at least one class of Claims that is impaired to have voted to accept the Plan.  A class of Claims accepts the Plan if: (i) holders of at least two-thirds in the total dollar amount of Allowed Claims in that class, and (ii) a majority in number of holders of Claims in that class, vote to accept the Plan.  **For any class in which no votes are cast or received, and if there is no other objections to confirmation received from such class, then such non-voting classes are deemed to have accepted the Plan.**

8.5     **Confirmation by Cramdown Pursuant to 11 U.S.C. § 1129(b).**  The Debtor shall seek Confirmation of the Plan pursuant to 11 U.S.C. § 1129(b) with respect to any rejecting Class of Claims.  The Debtor also reserves the right to modify the Plan and seek Confirmation otherwise consistent with the Bankruptcy Code.

8.6     **Conditions Precedent to Confirmation.**  The following are conditions precedent to confirmation of this Plan:

8.6.1     **Disclosure Statement.**  The Court shall have finally approved a Disclosure Statement with respect to this Plan as containing adequate information within the meaning of 11 U.S.C. § 1125.

19

8.6.2    **Form of Confirmation Order.**  The Confirmation Order shall be in a form and substance satisfactory to the Debtor.

8.7    **Conditions Precedent to Effective Date.**  Before the Plan becomes effective, the Confirmation Order shall have become a Final Order.

## ARTICLE IX

## DISTRIBUTIONS

9.1    **Distributions on Claims Allowed as of Effective Date.**  The Reorganized Debtor shall begin to make Distributions under the Plan, in accordance with the Plan terms, beginning on or about July 1, 2019, the anticipated first month following the entry of the Confirmation Order and the closing of the Exit Loan.  In the event the Effective Date is later, then the payments shall begin on the first day of the month subsequent to the month of the Effective Date.

9.2    **Method of Distributions.**  Any payment of Cash made by the Reorganized Debtor pursuant to the Plan shall, at the Reorganized Debtor's option, be made by check drawn on a domestic bank, wire transfer, or any other means available for payment to be remitted.

9.3    **Timing of Distributions.**  In the event that any payment, Distribution, or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or Distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

9.4    **Delivery of Distributions.**  Subject to Fed. R. Bankr. P. 9010, all Distributions under the Plan to holders of Allowed Claims shall be made to the holder of each Allowed Claim at the address of such holder as listed on the Claimant's Proof of Claim and if none, the Debtor's Schedules as of the Effective Date unless the Reorganized Debtor has been notified in writing of a change of address, including, without limitation, by the timely filing of a Proof of Claim by such holder prior to the Effective Date that provides an address for such holder different from the address reflected on the Schedules. In the event that any Distribution to any such holder is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of such holder, but no Distribution to such holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such holder, at which time such Distribution shall be made to such holder.

9.5    **Unclaimed Distributions.**  All unclaimed payments or Distributions made to any Creditor under the Plan, including but not limited to, unnegotiated checks or drafts, shall, six (6) months after the date of any Distribution, revert to the Reorganized Debtor to be redistributed pursuant to the Plan, and shall be forfeited as to the affected Creditors.  Any Creditor whose payment is forfeited under this provision will thereafter be treated as having a Disallowed Claim.

20

9.6     *De Minimis* **Distribution Cutoff.**  If a Distribution to be made to a Creditor holding an Allowed Claim would be $50.00 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder unless a request therefore is made in writing to the Reorganized Debtor.

9.7     **Compliance with Tax Requirements.**  A Distribution may be withheld until such time as such holder of the applicable Allowed Claim provides the necessary information to comply with any withholding requirements of any governmental unit.  Any property so withheld will then be paid to the appropriate authority.  If the holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any governmental unit within six (6) months from the date of first notification to the holder of the need for such information or for the cash necessary to comply with any applicable withholding requirements, then such holder's Distribution shall be treated as an unclaimed Distribution in accordance with this Plan.

9.8     **Allocations of Distributions between Principal and Interest.**  To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest, unless otherwise specifically set forth herein.

9.9     **No Interest on Claims.**  Except as specifically provided for in the Plan, interest shall not accrue on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim.  Interest shall not accrue or be paid on any Disputed Claim for the period from the Petition Date to the date that such a Disputed Claim becomes and Allowed Claim, and shall not accrue thereafter, except as otherwise provided in any Order of the Court. Except as expressly provided herein or in a Final Order of the Court, no prepetition Claim shall be Allowed to the extent that it is for postpetition interest or other similar charges.

## ARTICLE X

### PROCEDURES FOR RESOLUTION OF
### DISPUTED CLAIMS AND CLAIM ESTIMATES

10.1     **Procedure for Contingent and Unliquidated Claims.**     Creditors holding contingent or unliquidated Claims shall have sixty (60) days from the Confirmation Date to file a motion or adversary action with the Court to have their Claim Allowed.  Upon the allowance of a contingent or unliquidated Claim, it shall be entitled to Distribution under the Plan consistent with the treatment of other Claims in the Class in which the contingent or unliquidated Claim is ultimately Allowed.  The contingent or unliquidated Claim of any Creditor who fails to initiate action pursuant to this provision for the allowance of its Claim as set forth herein shall have its Claim disallowed and be forever barred from seeking any recovery from the Debtor, the Estate, and the Assets.  The Debtor does not believe that there are any Contingent or Unliquidated Claims.

21

10.2    **Objections to Claims.**    Unless otherwise ordered by the Bankruptcy Court, all objections to Claims, including determinations regarding the secured status of any Claim, shall be filed on or before ninety (90) days following the Effective Date, or forty-five (45) days following the filing of any Claim, whichever is later (the "Claims Objection Bar Date"), without prejudice to the extension of such period upon proper application therefor.  The objecting party shall serve a copy of each such objection upon the holder of the Claim in accordance with Fed. R. Bankr. P. 3007.  Any Claim for which a timely objection is not filed shall be deemed Allowed as filed or scheduled.

10.3    **Estimation of Claims.**    At any time, the Reorganized Debtor may request that the Court estimate any contingent or unliquidated Claim to the extent permitted by 11 U.S.C. § 502(c), regardless of whether the Reorganized Debtor have previously objected to such Claim or whether the Court has ruled on any such objection, and the Court shall have jurisdiction to estimate any Claim at any time during litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection.  If the Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on the Claim, the Reorganized Debtor may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Court.

10.4    **No Distributions Pending Allowance**.  Pending final allowance of any Claims, funds shall be held by the Reorganized Debtor in reserve for distribution, but no distribution shall occur until a Claim is finally Allowed.

10.5    **Authority to Compromise and Settle Disputed Claims without Court Approval.**  On and after the Effective Date, the Reorganized Debtor shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Disputed Claims without approval of the Bankruptcy Court.

## ARTICLE XI

## EFFECT OF PLAN CONFIRMATION, DISCHARGE, AND INJUNCTIONS/STAYS

11.1    **Discharge of Claims.**  Except as provided in the Confirmation Order, pursuant to 11 U.S.C. § 1141(d), the rights afforded under the Plan and the treatment of Claims and Equity Security Interests under the Plan shall be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims. The Confirmation Order shall discharge the Debtor from all Claims and other debts that arose before the Confirmation Date and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i), whether or not (i) a Claim based on such debt is allowed pursuant to 11 U.S.C. § 502, or (ii) the holder of a Claim based on such debt has accepted the Plan. As of the Confirmation Date, all persons and entities shall be precluded from asserting against the Debtor and/or the Reorganized Debtor, the Estate, or their successors or property, any other or

22

further Claims, debts, rights, causes of action, or liabilities based upon any act, omission, transaction or other activity of any nature incurred prior to the Confirmation Date. In accordance with the foregoing, the Confirmation Order shall be a judicial determination of discharge of all such Claims and other debts and liabilities of the Debtor, pursuant to 11 U.S.C. §§ 524 and 1141, and such discharge shall void any judgment obtained against the Debtor at any time to the extent that such judgment relates to a discharged Claim. For purposes of clarity, this paragraph shall not preclude a party from pursuing the enforcement of its treatment being granted under the Plan. The discharge granted to the Debtor hereunder shall not prohibit any Creditor from pursuing any non-Debtor guarantor or co-obligor, subject to the provisions contained in Section 11.3, 11.4, and 11.6 herein.

11.2    **Subordination Rights.**  The classification and manner of satisfying all Claims and Equity Security Interests and the respective Distributions and treatments hereunder takes into account and/or conforms to the relative priority and rights of the Claims and Equity Security Interests in each Class of the Debtor in connection with any contractual, legal, and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, 11 U.S.C. § 510(b), or otherwise, and any and all such rights are settled, compromised, and released pursuant to the Plan. The Confirmation Order shall permanently enjoin, effective as of the Effective Date, all persons and entities from enforcing or attempting to enforce any such contractual, legal, and equitable subordination rights satisfied, compromised, and settled in this manner.

11.3    **Injunctions.  Except as otherwise provided in the Confirmation Order,  the entry of the Confirmation Order shall constitute an injunction against all Persons from taking any actions to commence or continue any action or proceeding that arose before the Confirmation Date against or affecting the Reorganized Debtor, the Estate, or the Assets, *and against any guarantor or other person who might be obligated on any Claim along with the Reorganized Debtor*, so long as the Reorganized Debtor is in compliance with the Plan provisions.  That is to say, no party in interest may take any steps to collect or otherwise proceed on its claim against any Person obligated on a Claim, so long as the Reorganized Debtor is performing and in compliance with the Plan as confirmed.  No guarantor is being released, but no party can pursue any such Person so long as the Reorganized Debtor is in Plan compliance.**

11.4    **Terms of Injunctions and Stays.  Except as may be otherwise provided in the herein or in the final Confirmation Order, the Confirmation Order will permanently enjoin the commencement or prosecution by any person or entity, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities released or modified pursuant to the Plan, except for the treatment as provided for in the Plan.**

11.5    **Injunction and Stay as to Members, Officers and Insiders.  On the Effective Date, every holder of a Tax Claim and any Creditor asserting any type of personal liability against any Member, Officer or Insider shall be precluded and stayed from asserting against any such Member, Officer or Insider any Claim that is provided herein for payment in full**

23

by the Reorganized Debtor so long as the Reorganized Debtor is in compliance with the Plan; provided, however, any such claimant may obtain exemption from this stay:  (i) if the Plan is in default, (ii) if such holder obtains such exemption by the entry of an Order of the Court, and (iii) if such Allowed Claim is not paid in full pursuant to the terms of this Plan.   For clarity, no such guarantor, insider, member or officer shall be released by the Plan until Reorganized Debtor has paid the Allowed Claim in full.

11.6    **Indemnities for Members, Directors and Officers.**    Any state law indemnity obligations of the Debtor to its members shall continue, unaffected by the Plan, to the extent as they existed on the Petition Date.

11.7    **Post-Confirmation Liabilities of the Reorganized Debtor.**    The Reorganized Debtor will not have any prepetition liabilities except those expressly assumed and/or addressed under the Plan.  The Reorganized Debtor will be responsible for all ongoing business expenses and payments due and owing or contemplated under the Plan.

11.8    **Copies of Confirmation Order Sufficient Evidence of Waivers, Releases.**    Upon Confirmation of this Plan, a true and correct copy of the Confirmation Order shall be legally sufficient evidence of the terms, provisions, and effects of this Plan for all purposes in any subsequent judicial proceeding or official record.

11.9    **Binding Effect.**    The rights and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, such Person and all successors, heirs, and assigns of such Person.

## ARTICLE XII

## MISCELLANEOUS PLAN PROVISIONS

12.1    **Effectuating Documents.**    The Reorganized Debtor is hereby authorized to execute, deliver, file, or record such documents, contracts, releases and other agreements, and take all such further action as may be necessary, to effectuate and further evidence the terms of this Plan. The corporate charters of the Reorganized Debtor is hereby amended to include a provision prohibiting the issuance of additional non-voting equity securities in accordance with 11 U.S.C. § 1123(a)(6).

12.2    **Exemption from Certain Transfer Taxes.**    Pursuant to 11 U.S.C. § 1146(a), the delivery of any instrument or transfer under, and furtherance of, or in connection with, the Plan, including but not limited to deeds, bills of sale, assignments, or other instruments of transfer, shall not be subject to any stamp tax, real estate tax, or similar transfer tax.

12.3    **Closing of the Case.**    After Confirmation, the Reorganized Debtor may seek to close its Bankruptcy Case upon substantial consummation of the Plan; provided, however, that any closure shall be subject to the following conditions authorized by 11 U.S.C. § 349(b):  (a) said closing shall not alter, amend, revoke or supersede the terms of the confirmed Plan; (b) all rights

24

of the Debtor, Creditors, or any other Person treated under the Plan shall remain unaffected by said closing; (c) the terms of the confirmed Plan shall be binding on all Persons; (d) all orders previously entered by the Court, unless altered by the Plan, shall remain in full force and effect; and (e) the Court shall retain all jurisdiction set forth herein.

12.4   **Further Authorizations.**  The Reorganized Debtor shall be entitled to seek such orders, judgments, injunctions, and rulings they deem necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

12.5   **Modification or Withdrawal of Plan.**  The Debtor reserves the right to modify this Plan in accordance with 11 U.S.C. § 1127 and Fed. R. Bankr. P. 3019 at any time prior to the Confirmation Date.   Subject thereto, the Debtor may modify this Plan, before or after the Confirmation Date but prior to substantial consummation of this Plan, without notice or hearing, or after such notice as the Court deems appropriate, if the modification does not materially and adversely affect the rights of any parties in interest which have not had notice or opportunity to be heard with regard thereto.   In the event of any modification of this Plan on or before the Confirmation Date, any votes to accept or reject the Plan shall be deemed to be votes to accept or reject as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of the parties which have cast said votes.  Further, the Debtor reserves the right to revoke or withdraw this Plan any time before entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan prior to the Confirmation Date, or if Confirmation or the Effective Date do not occur, this Plan shall be deemed null and void.

12.6   **Consummation of the Plan.**  Substantial consummation shall occur when the Reorganized Debtor has made an initial Distribution to holders of Allowed Class 1-11 Claims set forth in Section 5 above.

12.7   **Severability of Plan Provisions.**  If the Court determines at the Confirmation Hearing that any material provision of this Plan is invalid or unenforceable, such provision, subject to 11 U.S.C. § 1127, shall be severable from this Plan and shall be null and void, and, in such event, such determination shall in no way limit or affect the enforceability or operative effect of any or all other portions of the Plan.

12.8   **No Admissions or Waivers.**  Neither the filing of this Plan or the Disclosure Statement (as either may be modified or amended) nor the taking of any action by the Debtor with respect to the Plan or Disclosure Statement is, or shall be deemed, an admission or waiver of any of the Debtor's rights or defenses.  In the event that Confirmation does not occur, or the Plan does not become effective, no statement contained herein or in the Disclosure Statement may be used or relied on in any manner as against the Debtor in any suit, action, proceeding, or controversy within or outside of the Bankruptcy Case.  The Debtor further reserves any and all of its rights against all Persons in the event the Plan is not confirmed or does not become effective.

12.9   **Notices/Service.**  Except as otherwise specified, all notices and requests shall be given by any written means, including but not limited to electronic email, facsimile, first-class

25

mail, express mail, or similar overnight delivery service, and hand-delivery letters, and any such notices or requests shall be deemed to have been given when received.  Notices shall be delivered as follows:

To the Reorganized Debtor:                    With a copy to:
Attn:  Carlos Carpenter                        Laura Day DelCotto, Esq.
dcarpenter@kbcdistributing.com                 DelCotto Law Group PLLC
                                               200 North Upper Street
                                               Lexington, KY 40507
                                               Telephone:  (859) 231-5800
                                               Facsimile:   (859) 281-1179
                                               ldelcotto@dlgfirm.com

## ARTICLE XIII

### RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case after Confirmation of the Plan with respect to the following matters:

13.1    To hear and determine all controversies relating to or concerning the classification or allowance of Claims.

13.2    To determine and fix all Claims arising from the rejection of any Executory Contracts or Unexpired Leases.

13.3    To hear any pending motions for rejection, assumption, or assignment of any Executory Contract or Unexpired Lease, and to fix and determine any amounts alleged due and owing thereunder in order to cure defaults.

13.4    To enable the Reorganized Debtor to consummate any and all proceedings they may bring prior to the closing of the Bankruptcy Case to set aside Liens or encumbrances, to recover any transfers, Assets, or damages to which the Debtor may be entitled under applicable provisions of the Bankruptcy Code or other federal, state, or local law.

13.5    To recover all Assets and properties of the Debtor, wherever located.

13.6    To permit amendments to the Schedules.

13.7    To make such orders as are necessary or appropriate to carry out the provisions of this Plan.

13.8    To modify this Plan pursuant to the Bankruptcy Code and the Bankruptcy Rules.

26

13.9    To hear any matters regarding interpretation, implementation, or consummation of the Plan and to correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order.

13.10   To decide issues concerning federal tax liability, reporting, and withholding that may arise in connection with the Confirmation or consummation of this Plan.

13.11   To enter a final decree closing the Bankruptcy Case.

Dated:  April 18, 2019                                     Respectfully submitted,

                                                           KBC ENTERPRISE LLC

                                                           By:  /s/ Carlos Carpenter
                                                                President and Designated
                                                                Representative, Debtor

Tendered by:

DELCOTTO LAW GROUP PLLC

/s/ Laura Day DelCotto
Laura Day DelCotto, Esq.
KY Bar No. 81763
200 North Upper Street
Lexington, KY 40507
Telephone:  (859) 231-5800
Facsimile:  (859) 281-1179
ldelcotto@dlgfirm.com
COUNSEL FOR DEBTOR AND
DEBTOR IN POSSESSION

27